## AMERADA PETROLEUM CORP. v. SUMNER et al.

No. 26696.   Sept. 29, 1936.

Butler & Brown, for petitioners.

Leo J. Williams, M. J. Parmenter, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM.   This is an original proceeding to review an award of the State Industrial Commission, in which award said commission found that on the 31st day of March, 1933, the claimant was in the employ of the respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and on said date sustained an accidental injury arising out of and in the course of his employment, the nature of which was a severe injury to the right side, arm, and shoulder, and pains radiating from the right side which affected the kidneys.

The commission found the average daily wage of the claimant at the time of the injury was $6, and entered an award based upon such finding, ordering compensation at the rate of $11.54 per week for a period of not to exceed 300 weeks from April 29, 1935, and ordering paid the sum of $350 attorney fees.

On June 8, 1933, at a hearing held before Mat McElroy at Oklahoma City, Frank Sumner testified that he went out to start the engines on the lease and came into this particular engine at about 3:30 o'clock; that he had started two others engines on the same day that he was injured, and had a little trouble with one of them before he got to this one; that he had been kicking this engine to get it started; that he had taken a couple of shots and never got it to fire again and he decided to blow it out and had his right hand on the wheel and right foot on the wheel when the engine took a shot which jerked him off the floor and over against the rail; that he turned around and rested for a moment or so; unscrewed the little pin that he blew the engine out with, and that at that time he thought he would start the engine, and when he reached up to take hold of the wheel his right hand seemed like it was numb, just as when one strikes the funny-bone, so he did not finish starting the engine, but went out without starting it; that subsequently it felt like he had a "crick" in his neck; that there was no one there; that he did not return to work the next day for the reason that he was discharged; that on Monday, the 2nd day of April, he reported to Mr. Shelly and told him that his shoulder was growing worse, and that on Tuesday, April 3d, Mr. Bruce, assistant superintendent, went with him to the doctor; that Dr. Culbertson made an X-ray that day, and asked him to come back the next morning, which claimant did, and the doctor gave claimant some medicine to take internally and to use externally; that he remained under the care of Dr. Culbertson 22 days; that at the time of the hearing his neck was stiff and drawing his head to the right

Subsequent to this hearing there were several hearings, after which the claimant was submitted to strict medical examinations, until finally the award on the 12th day of September, 1935, was entered. This proceeding is to vacate the last award, subsequent to all of the proceedings, motions, and examinations. The evidence is hope-

lessly conflicting. Claimant at the time of the last hearing was wearing a head brace. Three doctors testified for claimant and gave competent evidence supporting the award. Dr. L. A. Buchanan was positive in his statement that claimant would have to wear the brace all his life and was unable to perform any manual labor.

The petitioners present their errors under eight specifications and in the first seven on argument it is stated that petitioner will discuss the above specifications of error under a single proposition, namely, the commission erred in continuing an award to the claimant when the evidence disclosed that the claimant refused to co-operate with the physicians and surgeons offered and tendered by the petitioner, and that any disability that the claimant had at the time of the making of said order and award was due to his refusal to co-operate with said physicians, and his disability, if any, is due entirely to his own willful act and is not the result of the accidental personal injury complained of.

We have carefully reviewed the evidence and are convinced that there is competent evidence to support the finding of the commission. Claimant testified positively as to the nature of the accident upon which the injury is based and described in detail the nature and extent of the injury. His testimony is supported by competent medical evidence and the finding of fact that the accident occurred and that the disability resulted therefrom will not be disturbed. The final argument is based simply upon the fact that it was wholly unnecessary for the claimant to wear the head brace, and that the wearing thereof contributed to a rigidity that resulted in accentuating the nature of the injury to the detriment of the petitioner. We have examined the authorities cited to support the rule above urged by the petitioners, that unreasonable refusal to co-operate on the part of the claimant in a simple medical treatment or operation which would cure an injury will justify a holding that the claimant is without further right to receive an award.

We are of the opinion that these authorities are not in point. In Henley v. Oklahoma Union Ry. Co., 81 Okla. 224, 197 P. 488, this question is discussed fully, and the rule laid down that there is no obligation on behalf of the injured employee to submit to an operation involving a risk of his life or danger to himself, and subsequent to this opinion this court, in Carl B. King Drilling Co. v. Massenburg, 154 Okla. 236, 7 P. (2d) 454, further discussed this rule and held that under the holdings announced in that opinion the commission has no authority to compel an employee to submit to a major operation where there is a risk of life involved in a "slight degree." In that case this court quoted from Consolidated Lead & Zinc Co. v. State Industrial Commission, 147 Okla. 83, 295 P. 210, 73 L. R. A. 1298, in which we said:

" 'Where the workmen unreasonably refused to undergo a minor operation, simple, safe, and reasonably certain to effect a cure, the continuing disability results not from the injury, but from his own willful act.'

"That is, no doubt, the true rule in those cases wherein the disability sought to be cured necessitates only a minor operation, simple, safe, and reasonably certain to effect a cure.

"Equally true is the rule announced in Henley v. Oklahoma Union Railway Co., 81 Okla. 224, 197 P. 488, holding that the Industrial Commission has no authority to compel an employee to submit to a major operation where there is a risk of life involved in the 'slightest degree.' "

No case has been pointed out or called to our attention in which such a condition as this arose. Claimant testified that he could not remove the brace from his neck for an hour without extreme pain. A competent qualified medical expert gave as his opinion that the brace could never be removed. We know of no authorities holding that the employer, under a set of circumstances similar to this, where the finding of the commission is that an award should be made, has the right to urge that such award results from the willful act of the claimant within the pronouncement of the rule in the above authorities. We are of the opinion and hold that the evidence in this case does not warrant the vacation of the award upon such showing upon the theory that the claimant had refused to co-operate in an operation simple and expedient and without resulting danger to himself.

Finding no error the award is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.