### DIERKS LBR. & COAL CO. v. LINDLEY et al.

No. 28102.  March 1, 1938.

Fred L. Sikes and McPherren & Maurer, for petitioner.

W. P. Morrison, John Morrison, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding in this court brought by the Dierks Lumber & Coal Company, hereafter referred to as petitioner, to obtain a review of an award made by the State Industrial Commission in favor of O. E. Lindley, hereafter referred to as respondent.

The essential facts, as disclosed by the record before us will be briefly stated. The respondent, while in the employ of the petitioner and engaged in a business defined as hazardous by the Workmen's Compensation Law, sustained an accidental personal injury, which resulted in double inguinal hernias. The petitioner promptly furnished medical attention. An operation to correct the hernia on respondent's left side was performed and proved to be unsuccessful by reason of a stitch infection. Respondent thereupon submitted to another operation to correct his condition, and when this operation proved to be unsuccessful refused to submit either to a further operation to repair the condition of his left side, or to an operation for the hernia on his right side. and for which no operation had theretofore been performed. The petitioner paid compensation for the period of temporary total disability ensuing between the date of injury and the time respondent refused to submit to a further operation. The respondent then requested the State Industrial Commission to hear him on his claim and to award him compensation for permanent total disability. The competent evidence before the commission was in conflict both with respect to whether a further operation would correct the respondent's condition and the degree of danger which would accompany such further operation. The evidence of respondent tended to show that on account of his condition and the scar tissue which had been formed as the result of his previous operations, a further operation was contraindicated and would be attended with more than usual danger and risk to his health and life. The evidence of petitioner, on the other hand, tended to minimize the danger and to magnify the benefits which would accompany and accrue from a further operation.

The medical testimony of the parties was in substantial agreement with respect to the fact that the presence of scar tissue as the result of former operations which the respondent had undergone would make the success of a further operation on respondent's left side more problematical than it would otherwise be; and with respect to the fact that respondent's disability would be permanent unless relieved by an operation, and that so long as respondent's condition was unrelieved the performance by him of heavy manual labor would constitute a constant threat to his health and life. Respondent's evidence further showed the real disability was due to the condition on the left side, and that the condition on the right side had little, if any, effect on such disability. It was further proved, and respondent admitted, that notwithstanding the condition in which respondent had been left as the result of his injury, he had continued to perform substantially the same character and amount of labor as he had prior to his injury. In this connection, however, respondent testified that he had done so as a matter of necessity, and in order to provide for himself and his wife and children. Under the evidence so adduced, the commission made, inter alia, the following finding of fact:

"That on the 29th day of June, 1936, claimant was operated for one of said hernias on the left side, and that thereafter he left the hospital on the 4th day of August, 1936, and that said operation was unsuccessful; that said claimant suffered a re-occurrence of said hernia, and on the 23rd day of November, 1936, said respondent again caused an operation to be performed upon said claimant, and claimant was thereafter totally disabled until the 12th day of March, 1937; that during that period of time the claimant was paid $288 for temporary total disability at the rate of $8 per week, when the correct rate should have been $8.57 per week; that said hernia has again re-occurred to claimant, and that claimant is now suffering from re-occurrence of the hernia which has been unsuccessfully operated, as aforesaid, and from an additional hernia on the opposite side which has never been operated; that as a result of said unsuccessful operations and due to the presence of scar tissue in the vicinity of the hernia which was operated, a subsequent operation would probably be unsuccessful and would be dangerous to the life of the claimant; that as a result of said condition claimant has become totally and permanently disabled as a result of said hernias and re-occurrence of said hernia, and it would be dangerous to claimant's life to attempt to perform manual labor; that said total and permanent disability of said claimant commenced on the 15th day of July, 1937."

And thereupon awarded respondent compensation for permanent total disability.

The petitioner assigns five specifications of error and illegality in said award and presents and discusses the same under six propositions. The substance of the contentions thus advanced are: First, that the respondent was bound to accept the petitioner's offer of a further operation to relieve his condition, and that upon failure to do so was not entitled to any award of compensation; and, second, that the finding of the commission to the effect that the respondent was suffering from a permanent total disability is without the support of any competent evidence.

The first contention of the petitioner presents again the question of when the State Industrial Commission is authorized to make an award for permanent total disability in a hernia case. Under section 13356, O. S. 1931, it is provided:

"In the case of an injury resulting in hernia, compensation for eight weeks, and the cost of the operation shall be payable; provided, that if the hernia results in a total permanent disability then the commission may so determine said fact and award the claimant compensation for a total permanent disability."

This court has held that, under the above subsection, before an award can be made for permanent total disability the employee has to submit to an operation to correct the hernia condition, and that such operation must prove to be unsuccessful. Chas. N. Dunning Const. Co. v. Heck, 160 Okla. 93, 15 P.2d 988; Barnsdall Oil Co. v. State Industrial Commission, 178 Okla. 242, 62 P. 2d 655; Williams v. Commander Mills, 181 Okla. 362, 73 P.2d 1143. When, however, an employee has submitted to an operation to correct a hernia condition and such operation proves to be unsuccessful, he is not thereafter required to submit to further operations on the chance that they may prove successful. The rule in such case has been announced by this court in the case of United Service Street Car Co. v. McCarter, 167 Okla. 433, 30 P.2d 456, as follows:

"An injured workman who is permanently and totally disabled by reason of a recurring hernia, and who has undergone one unsuccessful operation, is not required to subject himself to another operation which would be dangerous and probably useless, in order to minimize the financial burden imposed by law on his employer or his employer's insurance carrier.

"In a case before the State Industrial Commission, where conflicting evidence is introduced concerning the safety of a tendered operation and the probability that a cure will be effected thereby, the reasonableness of the refusal of the injured employee to accept such tendered operation resolves itself into a question of fact to be determined from the evidence."

It is apparent from what has been said in the above case that the first contention advanced by the petitioner is not well taken and cannot be sustained.

There is left for consideration the contention that the finding of the commission that the respondent had sustained a permanent total disability as the result of his hernias is without the support of any competent evidence. This contention is predicated chiefly upon the fact that the respondent actually performed work of substantially the same kind and character after his injury as he had been accustomed to performing prior thereto. Ordinarily, a disability cannot be classified as total under the Workmen's Compensation Law where the earning power of the employee is not wholly destroyed and capacity to perform remunerative employment remains. Oklahoma Gas & Electric Co. v. Hardy, 179 Okla. 624, 67 P.2d 445. The rule thus announced has certain definite exceptions which exclude from its operation those cases where the capacity of the employee is confined to the performance of work of a slight or trivial nature, and those cases where the capacity to do ordinary manual labor remains, but can be exercised only at the cost of serious discomfort and pain on the part of the employee. Sweetwater Gin Co. v. Wall, 153 Okla. 96, 5 P.2d 126. We are of the opinion that cases which involve a situation where a party has actually worked, notwithstanding the fact that he was unable to follow continuously some substantially gainful occupation without material injury to his health and danger to his life, are to be included in the category just above mentioned.

The rule adopted by the federal courts in construing the term "permanent total disability," under war risk insurance policies, seems to support both by reason and analogy such conclusion. Carter v. United States, (4 Cir.) 49 F.2d 221.

In the case now under review, it appears that the question properly before the commission, after it had heard evidence of the failure of the operations to correct the respondent's hernia condition, was not whether the respondent had actually performed manual labor after its injury, but whether

he was properly able to do the work which he did perform. Sometimes men are impelled by stark 'necessity or a ·strong sense of duty and obligation to labor and to seek to carry on long after the human machine has been so broken and destroyed as to seem to make it impossible to drive it further. The wisdom of the effort and the struggle under such conditions may be questioned, but the gallantry of the action should not be penalized. The evidence before the commission showed that the respondent had carried on under the urge of necessity, and that in so doing he had risked both his health and his life, and that the disability under which he was laboring would probably be permanent, and most certainly would be such if he could not be relieved by the help of surgery. The respondent offered evidence from which the commission could conclude that relief by surgery could not be reasonably expected in respondent's case, and that, therefore, he would be entitled to the alternative provided under the statute. Upon review of the entire record. we are of the opinion that the finding of the commission that the respondent had sustained a permanent total disability as the result of his injury has the support of competent evidence. This being true, it becomes our duty to sustain the award.

Award sustained.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, PHELPS, and CORN, JJ., concur.